Robert Ahdoot, SBN 172098
rahdoot@ahdootwolfson.com
Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Theodore W. Maya, SBN 223242
tmaya@ahdootwolfson.com
Bradley K. King, SBN 274399
bking@ahdootwolfson.com
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310-474-9111; Fax: 310-474-8585

[additional counsel listed on signature page]

Counsel for Plaintiffs,
JESSICA BROWN and WAYNE BROWN

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA BROWN and WAYNE BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.   **'14 CV 0950 JLS  BLM**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>1. Violation of Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*<br>2. Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*<br>3. Negligence<br>4. Fraudulent Concealment<br>5. Product Liability – Design Defect<br>6. Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*<br>7. Breach of Express Warranty<br>8. Breach of Implied Warranties |

Plaintiffs Jessica Brown and Wayne Brown ("Plaintiffs"), by and through their counsel, bring this Class Action Complaint against Defendant BMW of North America, LLC ("Defendant" or "BMW"), on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.     This is a consumer protection and automotive defect class action arising out of the purchase of certain Mini Cooper vehicles designed, marketed, and sold by Defendant, including the following models: 2007 through 2010 Hardtop (R56), 2008 through 2010 Clubman (R55), and 2009 through 2010 Convertible (R57) (collectively, the "Defective Vehicles"). The Defective Vehicles have a defect within their timing chain tensioners that cost, at minimum, hundreds of dollars to fix and that can cause extensive engine damage (the "Defect").

2.     Confronted with customer complaints related to the Defect, including catastrophic engine failure, Defendant has systematically denied the existence of the Defect, and thus refused to honor any applicable warranties. As a consequence, Defendant has failed to reimburse vehicle owners for the costs they incur resulting from damages related to the failures of the timing chain tensioner, and/or refuses to provide repairs free of charge. As explained in detail below, Defendant was aware of but has failed to notify purchasers regarding the timing chain tensioner Defect, and these omissions were false, misleading, and had the capacity to deceive.

3.     Plaintiffs bring claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), negligence, fraudulent concealment, product liability (design defect),

violations of the Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.* ("MMWA"), breach of express warranty, and breach of implied warranties.

4.      Plaintiffs seek an order requiring Defendant to, among other things: (1) cease the unlawful omissions; (2) conduct a corrective advertising campaign to alert the public of the defect;  (3) pay damages and restitution to Plaintiffs and Class members in the amounts paid to repair the Defective Vehicles; and (4) reimburse Plaintiffs and Class members for the loss of value of the Defective Vehicles.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

6.      The Court has personal jurisdiction over Defendant because Defendant is authorized to, and conducts substantial business in, California, generally and this District, specifically.  Defendant has marketed, promoted, distributed, and sold the Defective Vehicles in California.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to this action occurred in this District as the Defect in Plaintiffs' vehicle manifested itself within this District.

## PARTIES

8.      Plaintiff Jessica Brown is a resident of San Diego, California.  Plaintiff Wayne Brown is a resident of Glendale, Colorado.  In May of 2012, Plaintiffs, as father and daughter, purchased a 2010 Hardtop (R56) Mini Cooper from a Mini dealer in Littleton, Colorado and are currently co-owners of the vehicle ("Plaintiffs' Vehicle"). At the time of purchase, Plaintiffs purchased a 100,000-mile, extended warranty for the vehicle.  Ms. Brown later brought the vehicle with her to California on military assignment.  After moving to California, Ms. Brown experienced catastrophic engine failure as a result of the Defect.  The vehicle's engine failure was caused by the Defect

2

and the vehicle was sold pursuant to Defendant's 100,000-mile warranty.  Even though Plaintiffs' vehicle only had 91,000 miles on it at the time the Defect manifested itself, Defendant refused to honor the warranty or pay for the repairs.

9.      Defendant BMW of North America, LLC is a Delaware limited liability company with its principal place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey, 07677.  Defendant manufactures and distributes the Defective Vehicles from its foreign manufacturing plants to consumers in California and throughout the United States.

**DEFENDANT HAS TOUTED THE TIMING CHAIN'S DURABILITY AND SUPERIOR DESIGN BUT THE FACTS SHOW THAT THE TIMING CHAINS SYSTEMATICALLY FAIL AND CAN CAUSE CATASTROPHIC ENGINE FAILURE**

10.      The Mini Cooper is a distinctive vehicle that has been a popular automotive icon since the 1960s.  Defendant acquired Mini Cooper in 2002 and marketed it as a new class of high-end vehicles that were affordable.  In 2007, Defendant released its second generation of Mini vehicles, featuring a four-stroke engine (the "Prince engine").  The Defective Vehicles were manufactured with the Prince engine.

11.      Unlike most engines made for the consumer market, the Prince engine uses a metal timing chain rather than a "belt" made of composite materials.  When the Prince engine was first introduced in 2004, Defendant touted the timing chain's durability compared to a timing belt, and indicated that the timing chain would remain maintenance-free throughout the full running life of the engine.  One of the features of the Prince engine Defendant has promoted is that the timing chain and tensioner are located inside the engine block.  However, actual road use has shown a significant drawback to this design: if the chain fails, damage to the engine can be catastrophic.

12.      A defective timing chain can cause damage to the engine and present serious safety concerns.  When a chain tensioner fails, the vehicle will lose all power, even while it is in motion. Some owners have reported losing power while in traffic or

1  driving on freeways, while others have filed complaints concerning the vehicle's
2  safety with the National Highway Traffic Safety Administration ("NHTSA") Office of
3  Defects.  Timing chain failure can also result in engine failure, requiring a full engine
4  replacement.  The typical price to replace a defective tensioner is well over $1,000,
5  and the price to replace an entire engine in the Defective Vehicles can exceed $10,000.

6       13.    The Defective Vehicles timing chain tensioner can fail at any time, even
7  if the owner follows Defendant's maintenance and service schedules.  According to
8  Defendant's warranties and maintenance program, the chain and tensioner do not
9  require service, and the on-board computer does not monitor chain condition.
10 Therefore, problems with the timing chain tensioner can easily go unnoticed and cause
11 serious damage to the vehicle.

12 **DEFENDANT WAS AWARE OF THE DEFECT SINCE AT LEAST 2008**
13 **BUT HAS FAILED TO PUBLICLY ACKNOWLEDGE, DIAGNOSE, AND**
14 **RECTIFY THE DEFECT**

15      14.    Defendant knew about the Defect since at least 2008, when Defendant
16 issued a technical service bulletin addressing the problem that year.  However,
17 following the notice, Defendant has failed to issue any recall or provide compensation
18 for those who had already replaced their chains or paid for related engine damage.
19 Furthermore, Defendant has ignored the plethora of consumer complaints submitted to
20 the NHTSA citing safety concerns due to the Defect.  Defendant instead has suggested
21 that timing chain maintenance is only needed once the Defective Vehicles reach
22 120,000 miles.

23      15.    Defendant provides a standard express warranty against any "defects in
24 materials or workmanship" in the Defective Vehicles to the first retail purchaser and
25 each subsequent purchaser for 48 months or 50,000 miles, whichever occurs first.
26 Defendant has purposefully concealed the Defect so that Defendant can claim that
27 customers' written warranty period has expired before the Defect manifests itself.
28 Defendant's failure to disclose not only unfairly shifts the cost of repairs to Class

4

members, but it leaves consumers unaware of the serious safety risks associated with the Defect.  Furthermore, Plaintiffs purchased an extended, 100,000-mile warranty that had not lapsed at the time the Defect manifested itself.

16.    The Defect has forced owners of the Defective Vehicles to unnecessarily risk their safety while driving the Defective Vehicles and to spend thousands of dollars in replacement and repair costs.

## THE DEFECT CAUSED PLAINTIFFS' VEHICLE TO SUFFER ENGINE FAILURE

17.    On or about December 30, 2013, Plaintiff Jessica Brown was driving Plaintiffs' Vehicle on US Highway 5 North in San Diego County, California.  At this time the vehicle had approximately 91,000 miles on it, well within Plaintiffs' 100,000-mile extended warranty.  Without any prior warning, the vehicle's low oil pressure light appeared and the vehicle began to lurch, made a loud, screeching noise, and then a popping sound came from the engine.  As she immediately pulled the vehicle off to the side of the highway, a large quantity of oil was leaking from the engine and the vehicle was emitting a strong exhaust odor.

18.    Just a few days prior to this incident, Plaintiffs' Vehicle was serviced at a Mini dealership in California for a routine oil change.  When Plaintiff Jessica Brown brought Plaintiffs' Vehicle back to the dealership, they told her the incident was the result of the vehicle having no oil and that it would not cover the cost of the repair.  Plaintiffs subsequently had a third-party mechanic inspect the vehicle, who determined that the timing chain tensioner bolt backed out, which caused the engine to leak all its oil out and seize with continued operation.  The mechanic further noted that the tensioner bolt was no longer attached properly and the oil spray reached all the way out to the rear bumper.

19.    The damages to Plaintiffs' Vehicle were significant, as Plaintiffs ultimately were responsible for over $14,000 in repairs.

CLASS ACTION COMPLAINT

## **TOLLING OF THE STATUTE OF LIMITATIONS**

20.     All applicable statutes of limitation have been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged herein. Plaintiffs and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendant did not report information within its knowledge to the NHTSA or consumers, nor would a reasonable and diligent investigation have disclosed that Defendant had information in its possession about the existence and dangerousness of the Defect and opted to conceal that information.

21.     Since the Defect cannot be detected until it manifests itself, Plaintiffs and Class members were not reasonably able to discover the Defect until after purchasing the Defective Vehicles.  Plaintiffs and Class members could not reasonably have been expected to learn of or discover Defendant's omissions concerning the Defective Vehicles until after manifestation of the Defect, and only then because they would be forced to discover what happened to their vehicles.  Therefore, the discovery rule applies to all claims asserted by Plaintiffs and Class members.

22.     Defendant has known about the Defect since at least 2008, if not earlier, has failed to alert Class members to the Defect, and has told Class members who reported the Defect that the mechanical failures caused by the Defect were attributable to other causes.

23.     Defendant was and remains, under a continuing duty to disclose to the NHTSA, Plaintiffs, and the Class the true character, quality, and nature of the Defective Vehicles; that this defect is based on dangerous, inadequate, and defective design and/or substandard materials; and that it will require repair, poses a severe safety concern, and diminishes the value of the Defective Vehicles.

24.     Because of the active concealment by Defendant, any and all limitations periods otherwise applicable to Plaintiffs' claims have been tolled and Defendant is estopped from relying on any statutes of limitation in its defense of this action.

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

25.    Plaintiffs seek relief in their individual capacity and seek to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a class initially defined as follows:

> All persons who formerly or currently own or lease the following Mini Cooper vehicles in California: 2007 through 2010 Hardtop (R56), 2008 through 2010 Clubman (R55), and 2009 through 2010 Convertible (R57).

26.    Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased the Product for the purpose of resale.

27.    Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or division into subclasses after they have had an opportunity to conduct discovery.

28.    <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The Class is so numerous that joinder of all members is unfeasible and not practicable.  While the precise number of Class members has not been determined at this time, Plaintiffs are informed and believes that many thousands of consumers have purchased the Products.

29.    <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

    a.    Whether Defendant violated the CLRA, California Civil Code § 1750, *et seq.*;

    b.    Whether Defendant violated the UCL, California Business and Professions Code § 17200, *et seq.*;

    c.    Whether Defendant was negligent;

d.  Whether Defendant fraudulently concealed the Defect;

e.  Whether Defendant is liable for a design defect;

f.  Whether Defendant violated the MMWA, 15 U.S.C. § 2301, *et seq.*;

g.  Whether Defendant breached its express warranty;

h.  Whether Defendant breached its implied warranties; and

i.  The nature of the relief, including equitable relief, to which Plaintiffs and the Class members are entitled.

30.  <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

31.  <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

32.  <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

33.  <u>Injunctive and Declaratory Relief</u>.  Fed. R. Civ. P. 23(b)(2).  Defendant's omissions are uniform as to all members of the Class.  Defendant has refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### (Violation of Consumer Legal Remedies Act – Civil Code § 1750, *et seq.*)

34.  Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

35.  Plaintiffs bring this claim individually and on behalf of the Class.

36.  This cause of action is brought pursuant to the Consumers Legal Remedies

Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Defendant's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

37.    Plaintiffs and each member of the Class are consumers as defined by California Civil Code §1761(d).  Defendant intended to sell the Products.

38.    The Defective Vehicles are goods within the meaning of Civil Code §1761(a).

39.    Defendant violated the CLRA in at least the following respects:

    a.    in violation of  §1770(a)(5), Defendant represented, and continued to represent when the Defect manifested, that the Defective Vehicles have approval, characteristics, and uses or benefits which they do not have (being free of defect);

    b.    in violation of §1770(a)(7), Defendant represented and continued to represent when the Defect manifested, that the Defective Vehicles are of a particular standard, quality or grade, when they are of another (having a design defect); and

    c.    in violation of §1770(a)(16), Defendant represented and continued to represent when the Defect manifested, that the Defective Vehicles have been supplied in accordance with previous representations (being free of defects), when they were not.

40.    Defendant violated the Act by representing the Defective Vehicles were safe and free of defects when they were not and by failing to notify Plaintiffs and Class Members of the Defect.  Defendant knew, or should have known, that these omissions were false and misleading.

41.    Defendant's acts and omissions constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

42.    On April 17, 2014, Plaintiffs notified Defendant in writing, by certified mail, of the violations alleged herein and demanded that Defendant remedy those

9

CLASS ACTION COMPLAINT

violations.

43.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of receipt of Plaintiffs' written notice pursuant to §1782 of the California Act, Plaintiffs will amend this Complaint to add claims for actual, punitive, statutory damages, and attorney fees pursuant to the CLRA.  Plaintiffs and the Class also will seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution, disgorgement, statutory damages, attorney fees and any other relief that the Court deems proper.

44.     Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally and knowingly provided misleading information to the public.

## SECOND CAUSE OF ACTION

**(California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq*.)**

45.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

46.     Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professional Code § 17200, *et seq*.

47.     Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. (as set forth in the first cause of action), and the Transportation Recall Enhancement, Accountability and Documentation Act (the "TREAD Act"), 49 U.S.C. § 30101, *et seq*. (by failing to timely inform the NHTSA of the Defect and allowing the Defective Vehicles to be sold with the Defect).

48.     Defendant's conduct also is unlawful in that it violates the California Secret Warranty Law, California Civil Code § 1795.90, *et seq*., by:

a.     Failing to timely notify all affected vehicle owners that the timing chains were part of an adjustment program and that they could have had their ignition switches repaired or replaced free of charge;

CLASS ACTION COMPLAINT

b.      Failing to reimburse vehicle owners who paid to have their timing chains repaired or replaced;

c.      Replacing or repairing defective timing chains for some customers but failing to notify all other customers of that benefit; and/or

d.      Failing to comply with the applicable notification provisions in the Secret Warranty Law.

49.      Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and Class members.  The harm to Plaintiffs and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act and the TREAD ACT as alleged herein.

50.      Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiffs relied on Defendant's omissions in purchasing the Defective Vehicle, driving it at the risk to their safety, and in paying for the repairs.

51.      As a direct and proximate result of Defendant's violations, Plaintiffs suffered injury in fact and lost money because they purchased the Defective Vehicle and paid the price they paid believing it to be free of defects when it was not and paid for the resulting necessary repairs.

52.      Plaintiffs, on behalf of themselves and Class members, seek equitable relief in the form of an order requiring Defendant to refund Plaintiffs and all Class members all monies they paid for repairing and/or replacing the Defective Vehicles, for loss of value of the Defective Vehicles resulting from the inherent defect, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and performing a corrective recall campaign.

**THIRD CAUSE OF ACTION**

**(Negligence)**

53.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

54.     Plaintiffs bring this claim individually and on behalf of the Class.

55.     Defendant had a duty to its customers as a manufacturer of motor vehicles to design, manufacture, market, and provide vehicles that, in their ordinary operation, are reasonably safe for their intended uses.  Defendant had a duty to adequately test its vehicles' safety before selling millions to consumers worldwide.

56.     Defendant had a duty to test vehicles for timing chain tensioner problems once Defendant was on notice that its vehicles had a propensity to have timing chain tensioner issues leading to catastrophic engine failure, which can cause bodily injury, death, and property damage.  Moreover, Defendant had a duty to provide true and accurate information to the public to prevent undue risks arising from the foreseeable use of its products.

57.     At all times relevant, Defendant sold, marketed, advertised, distributed, and otherwise placed Defective Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public.

58.     Defendant was negligent, and breached the above duties owed to Plaintiffs and Class members.

59.     As direct and proximate causes of Defendant's breaches, Plaintiffs and the Class have been damaged including, but not limited to, the cost of repairs required due to timing chain tensioner problems, the financial loss of owning the Defective Vehicles that are unsafe, and being subjected to potential risk of injury.

**FOURTH CAUSE OF ACTION**

**(Fraudulent Concealment)**

60.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

61.     Defendant concealed material facts concerning the Defect before, during, and after the sale of the Defective Vehicles to Plaintiffs and Class members.

12

62.     Defendant had a duty to disclose the Defect because it was known only to Defendant, who had superior knowledge and access to the facts, and Defendant knew it was not known to or reasonably discoverable by Plaintiffs and Class members.  These concealed facts were material because they directly impact the safety of the Defective Vehicles.  Whether a timing chain tensioner was designed and manufactured with appropriate safeguards is a material safety concern.

63.     Defendant actively concealed these material facts, in whole or in part, to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiffs and the Class.

64.     Plaintiffs and the Class were unaware of these concealed material facts and would not have acted as they did if they had known of the concealed facts.  Plaintiffs' and Class members' actions were justified.  Defendant was in exclusive control of the material facts and the public, Plaintiffs, and the Class did not know of these facts prior to purchasing the Defective Vehicles.

65.     Because of the concealment of the facts, Plaintiffs and the Class sustained damage because they purchased and retained Defective Vehicles that are now diminished in value from what they would have been, had Defendant timely disclosed the Defect.

66.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiffs' and Class members' rights and wellbeing, and to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## FIFTH CAUSE OF ACTION

### (Product Liability – Design Defect)

67.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

68.     Defendant designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired,

retrofit or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the Defective Vehicles and their component parts and constituents, which was intended by Defendant to be used as passenger vehicles and for other related activities.

69.     Defendant knew that the Defective Vehicles were to be purchased and used without inspection for defects by Plaintiffs and Class members.

70.     The Defective Vehicles were unsafe for their intended uses by reason of defects in their manufacture, design, testing, components, and constituents, so that they would not safely serve their purpose, but would instead expose the users of the vehicles to possible serious injuries.

71.     Defendant designed the Defective Vehicles defectively, causing them to fail to perform as safely as an ordinary customer would expect when used in an intended or reasonably foreseeable manner.

72.     The risks inherent in the design of the Defective Vehicles significantly outweigh any benefits of the design.

73.     Plaintiffs and Class members were not aware of the Defect at any time prior to the recent revelations regarding problems with the Defective Vehicles.

74.     As direct and proximate causes of the Defects, Plaintiffs and the Class have been damaged including, but not limited to, the cost of repairs required due to timing chain tensioner problems, the financial loss of owning the Defective Vehicles that are unsafe, and being subjected to potential risk of injury.

## SIXTH CAUSE OF ACTION

### (Violation of Magnuson-Moss Warranty Act, 15 U.SC. § 2301, *et seq.*)

75.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

76.     Plaintiffs and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

77.     Defendant is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

CLASS ACTION COMPLAINT

78.     The Defective Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

79.     Defendant affirmed the fact, promised, and/or described in writing that the timing chain tensioner would meet a specified level of performance over a specified period of time, namely, that it would not require maintenance and last for the life of the Defective Vehicles.  Defendant's written affirmations of fact, promises, or descriptions related to the nature of the timing chain tensioner in the Defective Vehicles became part of the basis of the bargain between Plaintiffs and Defendant.  Defendant refuses to recognize or honor the written timing chain tensioner warranties and, indeed, denies the existence of these warranties.  Defendant breached its written warranties when the Defective Vehicles did not perform as represented by Defendant and thereafter when Defendant refused to recognize or honor the warranties.  Defendant's conduct thereby caused damages to Plaintiffs and Class members.

80.     The amount in controversy of each Plaintiff's individual claim meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

81.     Resorting to any informal dispute resolution procedure and/or affording Defendant a reasonable opportunity to cure its breach of written warranties to Plaintiffs is unnecessary and/or futile.  At the time of sale to Plaintiffs, Defendant knew, should have known, or was reckless in not knowing of its omissions concerning the Defect, but nevertheless failed to rectify the situation and/or disclose it to Plaintiffs.  Moreover, the remedies available through any informal dispute resolution procedure would be wholly inadequate under the circumstances.  Accordingly, any requirement under the MMWA or otherwise that Plaintiffs resort to any informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of written warranties is excused and, thereby, deemed satisfied.

82.     As a direct and proximate result of Defendant's breach of written

15

warranties, Plaintiffs and Class members sustained damages and other losses. Defendant's conduct caused Plaintiffs' and Class members' damages and, accordingly, Plaintiffs and Class members are entitled to recover damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other equitable relief as appropriate.

## SEVENTH CAUSE OF ACTION
### (Breach of Express Warranty)

83.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

84.     Plaintiffs bring this claim individually and on behalf of the Class.

85.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased the Defective Vehicles.  The terms of that contract include the promises and affirmations to provide vehicles free of "defects in materials or workmanship."  This express warranty became part of the basis of the bargain and is part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendant on the other.

86.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

87.     Plaintiffs purchased an extended, 100,000-mile warranty, which was still in effect at the time the Defect manifested (at approximately 91,000 miles).

88.     Defendant breached the terms of this contract, including the express warranty, with Plaintiffs and the Class by not providing a vehicle that could provide the benefits described above (being free from defects).

89.     As a result of Defendant's breach of its express warranty, Plaintiffs and the Class have been damaged in the amount of the repair costs associated with the Defect, as well as their vehicles' diminished value as a result of the Defect.

## EIGHTH CAUSE OF ACTION
### (Breach of Implied Warranties)

90.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs.

91.     Plaintiffs bring this claim individually and on behalf of the Class.

92.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and Class members purchased the Defective Vehicles.

93.     The terms of that contract included the implied promises of merchantability that the product was fit for the ordinary purpose for which it was intended, *i.e.*, being safe to drive.

94.     The terms of the contract also included an implied promise of fitness for a particular purpose, *i.e.*, being safe to drive, in which Defendant had reason to know the particular purpose for which Plaintiffs and Class members required the vehicles and Plaintiffs and Class members relied on Defendant's skill and judgment to select and furnish suitable vehicles that were fit for that purpose.

95.     These implied warranties became part of the basis of the bargain, and were part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendant on the other.

96.     All conditions precedent to Defendant's liability under these contracts have been performed by Plaintiffs and the Class.

97.     Defendant breached the terms of these contracts with Plaintiffs and the Class, including the implied warranties of merchantability and fitness for a particular purpose, by not providing vehicles that were fit for the purpose of safe driving and were inadequately advertised due to Defendant's failure to disclose the Defect.

98.     As a result of Defendant's breach of its implied warranties, Plaintiffs and the Class have been damaged in the amount of the repair costs associated with the Defect, as well as their vehicles' diminished value as a result of the Defect.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.     Declaring that this action is a proper class action, certifying the Class as

requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.      Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Class;

C.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

D.      Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

F.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

G.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

CLASS ACTION COMPLAINT

**JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated:  April 17, 2014                     Respectfully submitted,


                                           **AHDOOT & WOLFSON, PC**


                                           Robert Ahdoot
                                           Tina Wolfson
                                           Theodore W. Maya
                                           Bradley K. King
                                           1016 Palm Avenue
                                           West Hollywood, California 90069
                                           Tel: 310-474-9111
                                           Fax: 310-474-8585
                                           Email: twolfson@ahdootwolfson.com
                                           rahdoot@ahdootwolfson.com
                                           tmaya@ahdootwolfson.com
                                           bking@ahdootwolfson.com

                                           **MORGAN & MORGAN**
                                           **COMPLEX LITIGATION GROUP**
                                           John A. Yanchunis, Sr. (*pro hac vice* pending)
                                           201 N. Franklin Street, 7th Floor
                                           Tampa, Florida 33602
                                           Tel: 813-223-5505
                                           Fax: 813-223-5402
                                           Email: jyanchunis@forthepeople.com


                                           Counsel for Plaintiffs,
                                           Jessica Brown and Wayne Brown

CLASS ACTION COMPLAINT

**AFFIDAVIT OF ROBERT AHDOOT**

I, Robert Ahdoot, declare as follows:

1.      I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiffs Jessica Brown and Wayne Brown in this action.  I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California.  This declaration is made pursuant to California Civil Code section 1780(d).  I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Based on my research and personal knowledge, Defendant BMW of North America, LLC does business within the County of San Diego and Plaintiffs' automotive defect manifested itself within the County of San Diego, as alleged in this Class Action Complaint.

I declare under penalty of perjury under the laws of the United States and the State of California this 17th day of April 2014 in West Hollywood, California that the foregoing is true and correct.

_____
Robert Ahdoot

20

CLASS ACTION COMPLAINT